# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHEENA ALEXANDER, individually** | : | **CIVIL CLASS ACTION** |
| **and on behalf of others similarly situated,** | : | |
| *Plaintiffs* | : | **NO. 12-1461** |
| | : | |
| **v.** | : | |
| | : | |
| **COAST PROFESSIONAL INC.** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                          MARCH 7, 2016

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is a *motion for final approval of class action settlement* filed by Plaintiff Sheena Alexander ("Plaintiff") pursuant to Federal Rule of Civil Procedure ("Rule") 23. [ECF 95]. Previously, this Court had granted preliminary approval to the Class Action Settlement Agreement. [EC7 92]. A hearing was scheduled and held on January 12, 2016, to entertain oral argument on Plaintiff's unopposed motion for final approval. Counsel for both parties appeared. For the reasons stated herein, the motion for final approval of the class action settlement is granted.

**BACKGROUND**

On March 23, 2012, Plaintiff filed a complaint against Defendant Coast Professional Inc. ("Defendant" or "Coast") alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692a, *et seq.* ("FDCPA"), in the course of offering rehabilitation of defaulted student loans. Specifically, Plaintiff alleged that Coast did not properly calculate a reasonable and affordable rehabilitation payment on defaulted FFELPs or Direct Loans. The case was filed

as a class action seeking statutory damages. Coast denies these allegations and that it violated the FDCPA.

Following extensive discovery and complex briefing in support of class certification, by Order and Memorandum Opinion dated September 5, 2014, this Court granted Plaintiff's motion for class certification. [ECF 74, 75]. Defendant filed a motion for reconsideration, [ECF 77], which Plaintiff opposed. [ECF 78]. This Court denied the motion for reconsideration by Order dated November 14, 2014. [ECF 79]. Thereafter, Defendant filed a notice of appeal. [ECF 80]. This appeal was subsequently dismissed by agreement of the parties. [ECF 83].

On March 23, 2015, the parties notified this Court of their ongoing settlement discussions and requested that the matter be stayed to facilitate those discussions. [ECF 84]. By Order dated March 24, 2015, [ECF 85], this Court stayed the matter until May 29, 2015, to allow the parties time to continue their settlement discussions. On May 29, 2015, the parties advised this Court that they had preliminarily agreed to the terms of a class settlement. [ECF 89]. On July 20, 2015, Plaintiff filed a motion for preliminary approval of the parties' class action settlement. [ECF 91]. By Order dated August 10, 2015, this Court preliminarily approved the parties' class action settlement, and scheduled a hearing for final approval for January 12, 2016. [ECF 92].

### *The Proposed Class Action Settlement Agreement*

The proposed class action settlement agreement contains the following material terms:

- Coast has agreed to pay the sum of nine thousand dollars ($9,000.00) for the benefit of the Settlement Class. Payment of such sum to Settlement Class members shall be made to those members who submit valid and timely Claim Forms ("Participating Settlement Class Members"). This represents the maximum statutory damages given the net worth of Defendant at the time the settlement was negotiated.

- The Settlement fund shall be divided equally among all such Participating Settlement Class Members, capped at $1,000.00 per Member.

- Additionally, Coast shall also pay the costs of notice to the Settlement Class and settlement administration.

- Coast will pay the sum of one thousand dollars ($1,000.00) in full settlement of the individual claims of the Representative Plaintiff, Sheena Alexander.
- Coast will pay Representative Plaintiff the sum of one thousand dollars ($1,000.00) (subject to approval by the Court) for her service to the Settlement Class, including the time and effort expended in sitting for a deposition, collecting discovery documents, and meeting with Class Counsel.

- Separate and apart from the Settlement Fund, Coast will pay the sum of up to one-hundred and eighty-five thousand dollars ($185,000.00) to Class Counsel contingent upon approval of the class settlement, for attorneys' fees and costs.

Notice of these material terms was provided to all potential Class Members pursuant to procedures stipulated in the preliminarily approved class action settlement. As of the date of the final approval hearing, no objections had been lodged to any of the proposed class action settlement's terms.

**DISCUSSION**

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id*. "These economic gains

3

multiply when settlement also avoids the costs of litigating class status – often a complex litigation within itself." *Id*.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals set forth factors (often called the "*Girsh* factors") a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig*., 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). However, no one factor is dispositive. *Hall v. Best Buy Co., Inc*., 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In *Krell v. Prudential Insurance Co. of America (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit Court identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms." *See also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (2) the existence and probable outcome of claims by other classes and subclasses;

> (3)  the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
> (4)  whether class or subclass members are accorded the right to opt-out of the settlement;
> (5)  whether any provisions for attorneys' fees are reasonable; and
> (6)  whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350.  Only the *Prudential* factors relevant to the litigation in question need be addressed.  *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and only the relevant *Prudential* factors in its analysis.

### *Girsh* Factors

1. *The complexity, expense and likely duration of the litigation*

Following the voluntary dismissal of the appeal filed, the parties were about to conduct factual discovery on the merits of Plaintiff's class claims when the proposed settlement was reached.  Had the settlement not been reached, Defendant would have likely filed a motion for summary judgment.  The continued prosecution of Plaintiff's claims against Coast would have required significant additional expense to the Class and a substantial delay before any potential recovery.  Had trial of the matter occurred, this would have involved additional expenses and, conceivably, another round of appeal.  Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties and weighs in favor of approving the settlement.  *See In re General Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were facts weighing in favor of settlement).

2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class."  *In re Certainteed Corp. Roofing Shingle Products Liability Litig.*,

5

269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement." *In re General Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, by reviewing its internal records, Coast was able to identify 2,620 potentially eligible class members. Those individuals identified as potential class members were mailed notices and class forms. Of the notices sent, 503 notices were returned as undeliverable and a subsequent effort to update those addresses was made. After notice was complete, 312 eligible claims were filed. As of the date of the final approval hearing held on January 12, 2016, no class member had exercised the right to opt out or had objected to the proposed settlement. Consequently, this factor is persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (low number of objectors and opt-outs strongly favors approval of the settlement).

       3.      *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively

valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement. Prior to reaching a settlement, the parties litigated a Rule 68 Offer of Judgment, and engaged in extensive discovery, including the review of thousands of pages of documents and the deposition of Defendant's corporate representative. The parties also litigated discovery disputes and submitted extensive briefing on the issue of class certification. After the Class was certified, Defendant pursued an appeal that was ultimately dismissed by agreement of the parties. As a result of the extensive proceedings that preceded the parties' settlement, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

### 4. The risks of establishing liability

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

In this case, in addition to the ordinary uncertainty of a jury's verdict, there have been several contested legal and factual issues argued, including the issue of whether Defendant's conduct violated the FDCPA. Defendant has denied any liability throughout this litigation. The proposed settlement avoids the risk that Defendant is found not liable. Thus, this factor weighs in favor of approval.

### 5. *The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. In this case, Plaintiff and the members of the Class were seeking, but were not guaranteed, the maximum possible award of statutory damages under the FDCPA, 15 U.S.C. §1692k(a)(2)(B)(ii). Under this section, the most Plaintiff could have recovered at trial would be one percent of Defendant's net worth. Financial documents produced during discovery showed that Defendant's net worth was approximately $900,000.00 at the time of settlement. One percent of Defendant's net worth is $9,000.00, an amount which represents exactly the settlement payment agreed to be paid to the Class. As such, through the settlement, Plaintiff and the Class will recover the maximum statutory damage award permitted.

However, simply prevailing on liability at trial would not have necessarily resulted in an award to the Plaintiff and the Class in the maximum allowable amount. Any potential award would have taken into account various factors in determining the appropriate statutory damage award, such as the frequency and persistence of noncompliance, the nature of noncompliance, the resources of Defendant, the number of persons adversely affected and the degree to which the noncompliance was intentional. *See* 15 U.S.C. §1692k(b)(2). Consequently, there is no certainty that Plaintiff would have achieved the maximum statutory damages recoverable had she prevailed on the merits. Accordingly, this factor weighs in favor of approval.

### 6. *The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re General Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action

were to proceed to trial. This case was certified as a class action on August 10, 2015. [ECF 92]. Though a district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable, *In re Prudential*, 148 F.3d at 321, the risk of decertification here is no more substantial than the risk in any class action. Therefore, this factor is neutral.

### 7. The ability of the defendant to withstand a greater judgment

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. Here, because the parties have agreed to a settlement amount equal to the maximum statutory damages permitted, this factor is irrelevant.

### 8-9. The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. *In re Warfarin*, 391 F.3d at 538. In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. Here, the Class is receiving the maximum statutory damages that could have been realized if Plaintiff ultimately prevailed at trial. The expense of a trial and use of the parties' resources would have been substantial, especially in conjunction with the likely post-trial motions and appeals that would

9

have likely followed any trial on the merits. Thus, a settlement is advantageous to all parties. Therefore, these factors, weigh in favor of approval.

## Relevant *Prudential* Factors

*1. Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings. Most of the pretrial discovery had been completed and, as such, the litigants were in a position to fully evaluate the merits. The advanced development of the record weighs in favor of approval. *See Chakejian v. Equifax Information Services, LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").

*2. Results achieved by settlement for individual Class Members versus the results achieved – or likely to be achieved – for other claimants*

This factor weighs in favor of approval since no one opted out and, as stated, the proposed class action settlement agreement obtains the maximum statutory damage award available to the Class.

*3. Whether Class or Subclass Members are afforded the right to opt out of the settlement*

As part of the Class notice process approved by this Court, Class members were given the opportunity to opt out by October 15, 2015, and no member of the Settlement Class opted out. Therefore, this factor weighs in favor of approval.

*4. Whether any provisions for attorneys' fees are reasonable*

As part of the Class notice process approved by this Court, Class members were advised that Plaintiff would seek an award of attorneys' fees of no more than $185,000.00, separate and apart from the settlement fund. No potential member of the Class objected to such an award.

Moreover, for the reasons discussed in greater length below, the attorneys' fees sought and agreed to in this case are reasonable. This factor weighs in favor of approval.

> 5. *Whether the procedure for processing individual claims under the class action settlement is fair and reasonable*

Class Counsel has retained, and this Court has approved, Dahl Administration ("Dahl") as the claims administrator. Dahl, a nationally-recognized firm that has provided notice and claims administration services for various class actions, has experience administering class action settlements such as this and will be supervised by Class Counsel. Dahl will evaluate all claims received to determine whether they are reasonable, valid, and payable from the Settlement Fund. The claims processing procedures in place are fair and reasonable. This factor supports approval of the settlement.

In summary, in light of the presumption of fairness that attaches to the settlement, *see In re Warfarin*, 391 F.3d at 539, and upon consideration of each of the *Girsh* factors and the relevant *Prudential* factors, this Court finds that the proposed class action settlement is fair and reasonable.

### Request for Attorneys' Fees and Costs

As compensation for their legal services and efforts, Class Counsel request this Court to approve the portion of the settlement which provides for reimbursement of attorneys' fees and costs in the amount of $185,000.00. This is an amount contemplated and agreed to in the settlement agreement and disclosed to Class members. As noted above, the notice provided to potential Class members expressly informed them that Class Counsel would apply for an award of attorneys' fees in an amount not to exceed $185,000.00. To date, no Class member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee. In support of their request for fees and reimbursement of costs and expenses,

counsel rely upon two declarations of counsel summarizing their time and the expenses incurred on behalf of the Class.  (*See* Declarations of Robert P. Cocco and Scott Alan George).

Federal Rule of Civil Procedure 23(h) provides "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Plaintiff and Class Counsel, as the prevailing party, seek approval of an award of attorneys' fees and reimbursement of litigation expenses in accordance with the terms of the Class Action Settlement Agreement and the fee shifting provision of the FDCPA, 15 U.S.C. §1692k(a)(3).  The Third Circuit Court of Appeals has held that fees are mandated under the FDCPA and that the district court should determine what constitutes reasonable attorneys' fees in accordance with Supreme Court precedent for such fees.  *See Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)).

There are two methods of calculating attorneys' fees in class actions – the lodestar method and the percentage of recovery method.  *In re Prudential*, 148 F.3d at 332-33.  The lodestar method is more commonly applied in statutory fee-shifting cases.  *Id*.  As stated, here, there is a fee-shifting statute which the Third Circuit has interpreted as requiring an award of attorneys' fees to the prevailing party.  *See Graziano*, 950 F.2d at 113-14.  Because the FDCPA is a fee shifting statute, this Court will apply the lodestar method in determining the reasonableness of the requested award of attorneys' fees.

Under the lodestar method, a court begins the process of determining the reasonable fee by calculating the "lodestar;" *i.e.*, the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433; *see also McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009).  Once the lodestar is determined, the court must then determine whether additional adjustments are appropriate.  *McKenna*, 582 F.3d at 455.

A reasonable hourly rate in the lodestar calculation is "[g]enerally . . . calculated according to the prevailing market rates in the relevant community," taking into account "the experience and skill of the . . . attorney and compar[ing] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). The prevailing market rate is usually deemed reasonable. *Public Interest Research Group v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995).

As revealed by the Declarations of counsel submitted with Plaintiff's attorneys' fee request, the hourly rates for the firms of Class Counsel are well within the range of what is reasonable and appropriate in this market. That is, the hourly charged rates for the attorneys in the firm are the same as the regular current rates charged for their services in standard non-class matters, including contingent and non-contingent matters. There has not been any alteration or deviation from the firm's hourly rates to account for the added complexity or increased risk factors of this action. The attorneys concentrate their practice in the area of consumer class action litigation, and their hourly rates are also within the range charged by attorneys with comparable experience levels for consumer class action litigation of a similar nature. *See, e.g.*, *Barel v. Bank of America*, 255 F.R.D. 393, 403-04 (E.D. Pa. 2009).

"In calculating the second part of the lodestar determination, the *time* reasonably expended," a district court should "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Pa. Envtl. Def. Found. v. Canon-McMillan School Dist.*, 152 F.3d 228, 232 (3d Cir. 1998). As noted in *Hensley*, lawyers are required to use judgment when billing their clients so as not to bill clients for "excessive,

redundant, or otherwise unnecessary" hours. *Id*. at 434. Likewise, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id*. at 434 (citations omitted). Ultimately, district courts have "substantial discretion in determining what constitutes . . . reasonable hours." *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).

In the two Declarations of counsel, each Class Counsel included a detailed summary of the hours worked by the partners, associates, and professional support staff, involved in this litigation. These summaries were prepared from contemporaneous, daily time records regularly prepared and maintained by the respective firms. After reviewing the Declarations and the attached supporting documentation, it appears that neither counsel is requesting compensation for any time that was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Having found the hourly rates and hours expended reasonable, the lodestar for Plaintiff's attorneys is $302,567.05, reflecting 440.1 hours of attorney and paralegal time. Counsel have also submitted documentation showing reasonable expenses in the amount of $7,583.27. Class Counsel, however, are requesting a sum of $185,000.00 in attorneys' fees and costs, an amount substantially less than the calculated reasonable lodestar amount. Further, this Court has also considered the fact that Class Counsel took this matter on a contingency basis, *see Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp*., 487 F.2d 161 (3d Cir. 1973), there were no objections to the amounts requested by any potential or actual Class Members, *see Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 124 (E.D. Pa. 2005), and that through the settlement, Class Counsel has obtained for the Class members an amount equal to the maximum statutory damage award permitted. Further, Defendants have agreed to pay this

amount in attorneys' fees and costs, separate and apart from the settlement fund. Therefore, under the circumstances noted, this Court approves the request for attorneys' fees and costs.

### Individual Settlement Award

Class Counsel also seek approval of a $2,000.00 individual settlement award for Plaintiff Sheena Alexander, for her willingness to undertake the risks and the burden of this litigation. "Incentive awards are not uncommon in class action litigation. . . ." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). These payments "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation.'" *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011). Incentive awards also "'reward the public service' of contributing to the enforcement of mandatory laws." *Id*. (quoting *In re Cendant*, 232 F. Supp. 2d at 344).

This Court recognizes that there would be no benefit to Class members if the Class representative had not stepped forward and prosecuted this matter to the current resolution. In doing so, Ms. Alexander devoted time and energy to the litigation, including reviewing documents, sitting for a deposition and consulting with counsel, as needed. The requested $2,000.00 is well within the range of awards made in similar cases. *See Barel v. Bank of America*, 255 F.R.D. 393, 402-03 (E.D. Pa. 2009) (awarding $10,000.00 individual award); *McGee v. Continental Tire North America, Inc.*, 2009 WL 539893, at *18 (D.N.J. Mar. 4, 2009) (awarding $3,500.00 individual award). Class Members were notified that Class counsel would request an award for Ms. Alexander in this amount and no Class member objected. Accordingly, the Court approves the individual award of $2,000.00 to Ms. Alexander.

**CONCLUSION**

For the reasons stated herein, this Court grants final approval of the proposed class action settlement, awards Class Counsel reasonable attorneys' fees and the reimbursement of expenses in the total amount of $185,000.00, and awards the sum of $2,000.00 to the Class Representative, Sheena Alexander.  An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO
*Judge, United States District Court*